

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**BROWNSVILLE DIVISION**

ENTERED
06/30/2017

| | | |
|---|---|---|
| IN RE: | § | |
| **MARK A SHANK; aka SHANK,** *et al* | § | **CASE NO: 11-10480** |
| **Debtors** | § | |
| | § | **CHAPTER  13** |
| | § | |
| | § | |
| | § | **JUDGE EDUARDO V. RODRIGUEZ** |

**MEMORANDUM OPINION**
**GRANTING DEBTORS' MOTION**
**TO DEEM MORTGAGE FULLY PAID**
**&**
**DEBTORS CERTIFICATION AND MOTION**
<u>**FOR ENTRY OF CHAPTER 13 DISCHARGE**</u>
*Resolving ECF Nos. 77, 82*

## I.  <u>INTRODUCTION</u>

This is a case which, at its conclusion, roused "a sleeping giant and fill[ed] him with a terrible resolve."[1]  A chapter 13 plan confirmation order is entitled to finality, absent a timely appeal or proceeding to revoke confirmation, and the parties are protected from having to re-litigate issues that were or could have been decided before plan confirmation.  As the mortgage holder now disputes the confirmed plan, however, the Court must determine whether Debtors have fully paid their home mortgage, including interest, through their chapter 13 plan when the mortgage holder never filed a proof of claim, but instead accepted payments from the chapter 13 trustee by and through a debtor filed proof of claim, and ultimately, determine whether Debtors are entitled to receive a discharge.

## II.  <u>FINDINGS OF FACT</u>

---

[1] Attributed to Admiral Isoroku Yamamoto.

This Court makes the following Findings of Fact and Conclusions of Law pursuant to Fed. R. Bankr. P. 7052, which incorporates Fed. R. Civ. P. 52, and 9014.  To the extent that any Finding of Fact constitutes a Conclusion of Law, it is adopted as such.  To the extent that any Conclusion of Law constitutes a Finding of Fact, it is adopted as such.  Additionally, to the extent that the Court made oral findings and conclusions on the record, this Memorandum Opinion supplements and supersedes those findings and conclusions.

On August 12, 2011, Mark A. Shank and Sandra Shank (collectively, the "***Debtors***") filed for relief under chapter 13, title 11 of the United States Code.[2]  Simultaneously, Debtors filed their Schedules in which they listed their homestead property as 1305 N. Indiana Ave., Brownsville, Texas 78521 (the "***Homestead***"), which was valued at $80,110.00 and secured by a lien in the amount of $29,860.28 on Schedule A.  ECF No. 1 at 10.  Schedule D lists Montanaro Investments ("***Montanaro***"), a secured creditor, as holding the first mortgage in the amount of $23,320.00 on Debtors' Homestead.  *Id.* at 18.  Additionally, various Cameron County taxing entities have secured claims in a total amount of $6,540.28 for ad valorem taxes.  *Id.*  Montanaro is listed in the Creditor Matrix with an address of 3107 Boca Chica, Brownsville, Texas 78521.  *Id.* at 44.

Although Debtors were below-medium income wage earners, they proposed a 60-month plan that provisioned a pro-rata payment of Montanaro's claim, e.g. $23,320.00, at 5.25% interest over a period of 54 months.  ECF No. 2 at 9 (including as amended, the "***Plan***"); *see also* ECF No. 25 at 6 (amending ECF No. 2).  Additionally, the Plan states that "[s]ubject to disposition of a timely filed motion to avoid a lien under § 522, or a complaint to determine the validity of a lien filed under Fed. R. Bankr. P. 7001, each secured creditor shall retain the lien

---

[2] Any reference to "Code" or "Bankruptcy Code" is a reference to the United States Bankruptcy Code, 11 U.S.C., or any section (i.e. §) thereof refers to the corresponding section in 11 U.S.C.

securing its claim." ECF No. 25 at 5. Finally, the Plan provides that "[t]he lien shall be enforceable to secure payment of the claim the lien secures, as that claim may be modified by the plan." *Id.*

On August 15, 2011, Debtors' Counsel penned a letter to Montanaro advising it that Debtors had filed for chapter 13 bankruptcy. Ex. 8. On August 17, 2011, the Court issued its Initial Order for Case Management of Chapter 13 Case, which the Bankruptcy Noticing Center ("**BNC**") certified that Montanaro was mailed a copy. ECF Nos. 10, 14. On August 22, 2011, the chapter 13 trustee ("**Trustee**") issued her notice of the First Meeting of Creditors to be held on September 22, 2011, along with a notice of the claims bar date and the certificate of notice filed by the BNC on August 25, 2011, reflecting that Montanaro was mailed a copy. ECF Nos. 16, 19. On September 22, 2011, Debtors appeared at the First Meeting of Creditors and Trustee concluded the meeting on the same date.

On November 3, 2011, Trustee filed a Motion to Dismiss the case for failure to file a feasible plan and necessary amendments, and the certificate of notice filed by the BNC on November 5, 2011, reflects that Montanaro was mailed a copy. ECF Nos. 23, 24. On November 5, 2011, Debtors filed an Amended Chapter 13 Plan, but notably, Montanaro was not listed on the certificate of service filed by the Debtors. ECF Nos. 25, 27. The deadline for the filing of proofs of claim ran on December 21, 2011, by which time Montanaro had not filed a claim. ECF No. 16.

On January 6, 2012, Trustee filed her Notice of Confirmation Hearing, Summary of Chapter 13 Plan and Notice and Motion for Valuation of Security, Setting of Interest and Lien Avoidance Notice which provisioned, *inter alia*, for the amount of $23,320.00 at 5.25% to be paid on a pro-rata basis to Montanaro under the Plan. ECF No. 35 ("**Notice of Confirmation**

*Hearing*").  Importantly, the certificate of service for the Notice of Confirmation Hearing and the BNC certificate of notice lists Montanaro as a party to receive notice at the address previously listed on Schedule D.  *Compare* ECF No. 1 at 18 *with* ECF Nos. 35, 36.

On February 2, 2012, Debtors' Plan was confirmed without objection.  ECF No. 38 (the "**Confirmation Order**").  The Confirmation Order provides, *inter alia*, that "each secured creditor shall retain the lien existing prior to the commencement of the case to secure payment of the allowed amount of its claim until the Debtor is discharged."  *Id.* at ¶ 5.  A copy of the Confirmation Order was mailed to Montanaro by the BNC on February 4, 2012.  ECF No. 39.

On October 30, 2012, Debtors filed a Motion to Modify the Plan, which was amended on November 13, 2012, due to the fact that Mr. Shank was diagnosed with cancer and needed to adjust the plan payments in order to accommodate their reduced income during Mr. Shank's treatment period.  ECF No. 43, 48.  Debtors' certificate of service, however, reflects that neither of these filings was served on Montanaro.  *Id.*  On December 6, 2012, Debtors' Amended Motion to Modify Plan was confirmed by the Court again without objection.  ECF No. 52 (the "**Modification Order**").  The certificate of notice filed by the BNC, however, reflects that Montanaro was served with a copy of the Modification Order, as amended.  ECF No. 57.

On October 31, 2012, Debtors, on behalf of Montanaro, filed a Secured Proof of Claim in the amount of $23,320.00 to be paid at 5.25% interest, valuing the Homestead at $80,110.00, and listing as the Homestead security for the claim and listing the same address as used on Schedule D and in the Creditor Matrix.  Claim No. 12-1 ("**Claim No. 12**"); *see also* ECF No. 1 at 18, 44.  No objections were lodged against Claim No. 12; therefore, it was allowed as filed.  *See, e.g.*, *id.*

On September 8, 2016, Trustee filed her Notice of Plan Completion, certifying that "Debtors . . . have made all payments to the Chapter 13 Trustee as required by the Order

Confirming the Chapter 13 Plan and all approved modifications." ECF No. 73. On September 13, 2016, Debtors filed their Certification and Motion for Entry of Chapter 13 Discharge. ECF No. 77 (the "***Debtors' Certification***"). Debtors' Certification states that Debtors "have made all payments required by [their] confirmed chapter 13 plan." *Id.* at ¶ 2. Nevertheless, on September 29, 2016, Debtors filed an Expedited Motion To Abate Entry of Discharge stating that Montanaro contacted Debtors and advised that there was still a balance of more than $30,000.00 owed on the Homestead, which the Debtors dispute. *See generally* ECF No. 80.

Additionally, and on the same date, Debtors filed a Motion to Deem Mortgage Fully Paid. ECF No. 82 (the "***Motion to Deem***"). The Debtors assert that although Montanaro alleges that there is a remaining balance on its claim, Debtors filed Claim No. 12 on Montanaro's behalf, and which was fully paid by Trustee through the confirmed Plan. *Id.* Importantly, Montanaro accepted all payments from the Trustee made by the Debtors under the Plan. Ex. 16. In their Motion to Deem, Debtors raise several issues:

    i.    that Montanaro has alleged that it is owed approximately $30,000.00 because all Trustee payments were being applied to accrued interest, late charges, penalties and other fees instead of to principal;

    ii.    that Montanaro has asserted that its claim is based on a note and Deed of Trust that is different from the Note and Deed of Trust that the Debtors believed was the basis of the claim that was filed in their case;

    iii.    that during the course of this case, Montanaro would frequently not cash Trustee's checks, but rather allowed the checks to go stale;

    iv.    that it was only upon Debtors' counsel insistence, by and through correspondence to Montanaro, that Montanaro began cashing Trustee's checks;

v.  that Montanaro will not release its lien on the Homestead until it is paid the remaining $30,000.00 balance.

*See generally* ECF No. 82.

On October 3, 2016, the Court granted Debtors' Motion to Abate and on October 24, 2016, this Court issued an order setting a hearing on Debtors' Motion to Deem for November 7, 2016 ("***Hearing***").  ECF Nos. 86, 92.  Debtors filed a Certificate of Service indicating that the Order Setting Hearing was transmitted to Montanaro via First Class U.S. Mail.  ECF No. 93.

At the November 7, 2016 Hearing, Debtors' Counsel appeared, informed the Court that Montanaro was sent notice of the Motion to Deem and of the Hearing, but neither filed a response nor appeared at the hearing.  ECF No. 96; s*ee also* ECF Nos. 82, 93.  Debtors' Counsel did not believe that Montanaro was represented by bankruptcy counsel, despite being represented by an attorney in real estate matters.  Nevertheless, Debtors offered the following exhibits, which were admitted into evidence without any objections:

Exhibit 1:  Mechanic's Lien Contract between Debtors and Chris Lerma ("***Lerma***") on August 23, 2001;

Exhibit 2:  Transfer of Lien from Lerma to Montanaro dated August 23, 2001;

Exhibit 3:  Deed of Trust dated April 11, 2003;

Exhibit 4:  Mechanic's Lien Contract between Debtors and Anastacio Robles, Jr. ("***Robles***") on December 14, 2005;

Exhibit 5:  Transfer of Lien from Robles to Montanaro dated December 14, 2005;

Exhibit 6:  Promissory Note dated December 14, 2005;

Exhibit 7:  Deed of Trust dated December 14, 2005;

Exhibit 8:  Notice Letter of Bankruptcy Filing from Debtors' Counsel to

Montanaro dated August 15, 2011;

Exhibit 9:      Creditor Matrix;

Exhibit 10:     Notice of § 341 Meeting;

Exhibit 11:     Debtors' Confirmed Chapter 13 Plan;

Exhibit 12:     Order Confirming Chapter 13 Plan;

Exhibit 13:     Proof of Claim filed by Debtors on behalf of Montanaro;

Exhibit 14:     Debtors' Amended Motion to Modify Confirmed Plan and Notice of Hearing and Time to Object and Order Modifying Chapter 13 Plan;

Exhibit 15:     Trustee's Payment History for Montanaro's Claim;

Exhibit 16:     Trustee's accounting of checks issued to Montanaro; and

Exhibit 17:     Montanaro's Accounting.

At the Hearing, Mrs. Shank was the sole witness to provide testimony which can be summarized as follows:

i.      Montanaro was the mortgagee of their Homestead;

ii.     Debtors have made all of their plan payments;

iii.    Debtors entered into a Mechanic's Lien Contract with Lerma on August 23, 2001, to make repairs on their Homestead. Ex. 1. As consideration for the Mechanics Lien Contract, the Debtors signed a Promissory Note and Deed of Trust in favor of Lerma for the $20,000.00 with a maturity date of November 13, 2001;

iv.     On August 23, 2001, the Promissory Note and Deed of Trust in favor of Lerma was transferred to Montanaro. Ex. 2;

v.      On April 11, 2013, Debtors contracted with Dean Owen to conduct additional repairs to the home. In order to facilitate the repairs, Debtors executed a new

Note and Deed of Trust in favor of Montanaro, which renewed and extended the balance remaining on the prior note with the new loan for a new balance of $21,332.87 and a maturity date of December 26, 2014. Ex. 3;

vi.   On December 14, 2005, Debtors entered into another Mechanic's Lien Contract with Robles for $11,000.00 to make additional repairs on their Homestead.  Ex. 4. Contemporaneously, Debtors executed a Promissory Note and Deed of Trust in favor of Montanaro combining the $11,000 with the remaining balance of the prior note for a new balance of $31,573.53 at 14% per annum and a maturity date of February 14, 2024.  Ex. 5;

vii.   Debtors calculated Montanaro's claim as $23,300.20 because they were required to "play a guessing game" to determine what was still owed to Montanaro.  When Debtors filed for bankruptcy, Mrs. Shank was unable to locate most of the documents related to Montanaro's lien, but understood that she owed the amount related to the April 11, 2003 Note and Deed of Trust.  *See* Ex. 3.  Mrs. Shank was under the impression that the entire amount owed to Montanaro was due on December 26, 2014—rather than the February 14, 2024 maturity date set forth in the December 14, 2005 Note—and that this is why the Plan proposed a pro-rata payment on Montanaro's claim.  *See id.*;

viii.   At the time of filing bankruptcy, Mrs. Shank could not recall the exact amount owed on the December 14, 2005 loan because of "too many dramatic events" and forgot that a second note was owed to Montanaro;

ix.     While preparing the Schedules, Mrs. Shank contacted Mr. Montanaro[3] to determine exactly how much was owed.  Mrs. Shank testified that Mr. Montanaro asked Mrs. Shank to call him back despite her insistence that it was important.  Mrs. Shank called Mr. Montanaro back and Mr. Montanaro told Mrs. Shank that he did not have the amounts requested and to call him back.  Mrs. Shank testified that she did not call Mr. Montanaro back;

x.     Montanaro never sent Debtors a statement or any sort of correspondence and that the Debtors paid Montanaro in cash;

xi.     Montanaro provided Debtors with receipts, but did not inform Mrs. Shank what her balance on the loan was despite her repeated requests at the time of payment; and

xii.     Mrs. Shank had contact with Mr. Montanaro twice during the five years of Debtors' bankruptcy, to wit:

        1.    the first such instance[4] was when, on the advice of counsel, Mrs. Shank telephoned Mr. Montanaro to inquire as to why Montanaro was not cashing Trustee's checks and whether the checks would be cashed if reissued. According to Mrs. Shank's testimony, Mr. Montanaro's explanation as to why Trustee's checks were not being cashed was the fact that he was too busy but would indeed cash them if they were re-issued.  As a result, Trustee re-issued the checks and they were eventually cashed by Montanaro.

---

[3] Mr. Montanaro is one of the owners of Montanaro.
[4] There is no evidence in the record as to the date of the telephone call between Mrs. Shank and Mr. Montanaro.

2. the second such instance[5] was when Mrs. Shank went to see Mr. Montanaro in person to inquire about the release of Montanaro's lien after Debtors completed their bankruptcy. It was this instance in which, Mr. Montanaro claimed that Debtors' still owed approximately $30,000.00 on the Homestead and provided Mrs. Shank with a handwritten explanation and mathematical calculation of the $30,000.00. Ex. 17.

At the conclusion of the Hearing, the Court reset the matter to January 4, 2017, and ordered briefing on the issue of whether this Court's prior ruling in *In re Sierra*, 560 B.R. 296, (Bankr. S.D. Tex. 2016), impacts the finality of Debtors' confirmed Plan; whether the Debtors should be required to bring this matter in an adversary proceeding; and whether Montanaro actively participated in this case such that it should be bound to the Plan's terms. ECF No. 97.

On December 20, 2016, Debtors filed an Expedited Motion to Extend Time to file a brief, which was granted. ECF Nos. 101, 102. On December 22, 2016, Mr. Andrew Rozell filed a Notice of Appearance on behalf of Montanaro. ECF No. 103. That same day, the parties filed an Agreed Motion to reset the hearing to February 7, 2017, which was granted. ECF Nos. 104, 105.

On December 30, 2016, Debtors filed their Brief in Support of the Motion to Deem Mortgage Fully Paid & Request for Entry of Discharge. ECF No. 108. On January 16, 2017, Montanaro filed a Brief in Opposition to Debtors' Motion to Deem Mortgage Fully Paid & for Other Relief. ECF No. 109. Thereafter, this Court granted Debtors leave to file a supplemental brief. ECF No. 111. The Court continued the February 7, 2017 hearing to March 7, 2017. ECF

---

[5] There is no evidence in the record as to the date of the interaction between Mrs. Shank and Mr. Montanaro.

No. 114.  On February 6, 2017, Debtors filed their Supplemental Brief.  ECF No. 116.

This Court held a hearing on the Motion to Deem on March 7, 2017, during which counsel for Debtors and Montanaro, respectively, presented oral arguments, but did not offer any additional evidence on the matter.  Debtors' position can be summarized as follows:

      i. An adversary proceeding is not required because Debtors are not seeking to void or invalidate Montanaro's lien;

      ii.  Montanaro's secured lien has been fully paid pursuant to the Plan;

      iii.  A creditor is bound to the Plan if they received notice and participated *at any point* in the Plan, whether or not the participation occurred prior to confirmation;

      iv.  Montanaro is bound to the terms of the Plan because it participated in the Plan.

Montanaro responded by asserting that:

      i.  An adversary proceeding is required because Debtors are asking the Court to determine the extent of Montanaro's lien, which was paid under the Plan at 5% interest despite a 14% contract interest rate;

      ii.  A plan is binding on creditors who participate in the confirmation process;

      iii. Montanaro did not participate in the confirmation process and therefore is not bound by the terms of the Plan;

      iv. Montanaro's act of cashing checks from Trustee after confirmation does not qualify as active participation in a Plan;

      v.  Montanaro admitted receiving notice of the bankruptcy and the Plan.

At the conclusion of the Hearing, the matter was taken under advisement.  Briefing has

now closed and the matter is ripe for consideration.

## III.  LEGAL STANDARD

### A.  The Legal Significance Of A Debtor Filed Proof of Claim

"A proof of claim is a written statement setting forth a creditor's claim."  Fed. R. Bankr. P. 3001(a).  Typically, a proof of claim is executed by the creditor or creditor's agent.  11 U.S.C. § 501(a)–(b); Fed. R. Bankr. P. 3001(b).  Additionally, creditors can timely file a proof of claim up to 90 days after the "first date set for the meeting of creditors called under § 341(a)."[6]  Fed. R. Bankr. P. 3002(c).  *But see* 11 U.S.C. § 502(a) (stating that claims are allowed unless objected to by a party in interest).  "If a creditor does not timely file a proof of such creditor's claim, [however], the debtor or the trustee may file a proof of such claim."  § 501(c); Fed. R. Bankr. P. 3004 (allowing the debtor or trustee to file a proof of claim "within 30 days after the expiration of time for filing claims").  Furthermore, a proof of claim is allowed unless an interested party objects, and although a secured creditor is not required to file a proof of claim, § 501 permits the filing of a claim.  § 501; § 502(a); *In re Rodriguez*, 567 B.R. 275, 279 (Bankr. S.D. Tex. 2017).

Finally, although liens generally pass through a bankruptcy unaffected—allowing a secured creditor to forgo filing a proof of claim—a secured creditor that desires to be paid through a plan must file an allowed proof of claim to be provided for under the plan.  *Johnson v. Home State Bank*, 501 U.S. 78, 84 (1991); *In re Norton*, 2017 WL 354320, at *2 (Bankr. N.D. Tex. Jan. 24, 2017); *see also* 11 U.S.C. § 1326(c); Fed. R. Bankr. P. 3021.  Having an allowed claim is critical because "[o]nly claims filed under § 501 are deemed allowed."  *In re Norton*, 2017 WL 354320, at *2 (citing *In re Simmons*, 765 F.2d 547, 551 (5th Cir. 1985).

### B.  Whether a Chapter 13 Plan Attempts to Void a Lien

---

[6] Within a reasonable time after the order for relief in a case under this title, the United States trustee shall convene and preside at a meeting of creditors.  11 U.S.C. §341(a).

The Code does not define when a lien is voided.  *See generally* 11 U.S.C. § 101.  The Fifth Circuit, following the reasoning of other circuits, found that a confirmed plan "may void liens not specifically preserved."  *In re Ahern Enters. Inc.,* 507 F.3d 817, 822 (5th Cir. 2007). Void is defined as "to render of no validity or effect; to annul; nullify."  BLACK'S LAW DICTIONARY (10th ed. 2014).  In the context of a chapter 11 bankruptcy,[7] the Fifth Circuit determined that for a lien to be voided "(1) the plan must be confirmed; (2) the property that is subject to the lien must be dealt with by the plan; (3) the lien holder must participate in the reorganization; and (4) the plan must not preserve the lien."  *In re Ahern Enters. Inc.,* 507 F.3d at 822.  Although the Fifth Circuit did not specify what activity would qualify as "a sufficient level of participation," *Ahern* held that filing a proof of claim as an unsecured priority creditor was sufficient participation.  *Id.* at 823.

Turning now to a subsequent case—which permeates both the Debtors' and Montanaro's briefs—a chapter 11 debtor appealed the district court's holding that a creditor's lien survived confirmation, despite the plan failing to provide the creditor any recovery and noting that the debtor "contested the validity" of the lien.  *In re S. White Transp.*, 725 F.3d at 495–96.  On appeal, the Fifth Circuit determined that the participation requirement must be met in a case where the debtor contested the creditor's lien and provided no recovery for the creditor in the confirmed plan.  *Id.*  Most notably, the Fifth Circuit held that "the word participation connotes activity, and not mere nonfeasance" and that in order to meet the participation requirement to void a lien there must be "more than mere passive receipt of effective notice."  *Id.* at 497–98 (citing *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 132 S. Ct. 2566, 2587 (2012), for the proposition

---

[7] The statute controlling the effect of a confirmed chapter 11 plan, 11 U.S.C. § 1141.

that there is a difference between taking part in an activity and choosing not to act); *see also* Black's Law Dictionary 1229 (10th ed. 2014) (defining 'participation' as "the act of taking part in something, such as a partnership, a crime, or a trial"). As a result, the Fifth Circuit held that the lien survived confirmation because the creditor never participated in the chapter 11 plan, although they received effective notice. *In re S. White Transp.*, 725 F.3d at 498.

Recently, the Fifth Circuit considered whether a chapter 11 plan voided a lien where the plan contained a term requiring creditors to file a request for relief to be paid post-petition interests and costs within thirty days of confirmation. *In re Vitro Asset Corp.*, 656 F. App'x 717, 720–21 (5th Cir. 2016) (addressing a plan term, which instructed creditors seeking "payment of either postpetition interest or reimbursement of attorney's fees and other costs associated with such claimant's Allowed Claim . . . shall file with the Bankruptcy Court . . . a request seeking such relief within 30 days after the Effective Date"). The challenging creditor failed to file a request for relief seeking reimbursement for post-petition interest and costs, despite being paid the amount of the base lien in the debtor's plan. *Id.* The Fifth Circuit determined, *inter alia*, that the creditor's lien for post-petition interest and costs was properly voided by the Plan because the creditor participated in the reorganization because it filed two proofs of claim. *Id.* at 723–24.

## C. *Res Judicata* Bars a Creditor From Relitigating Confirmation Of A Chapter 13 Plan After a Confirmation Order Becomes Final

Section 1322(b)(2) provides that "a chapter 13 plan may modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence." *In re Sierra*, 560 B.R. at 299 (quoting § 1322(b)(2)). *Sierra* stands for the proposition that a chapter 13 plan may provision for full payment of a § 1322(b)(2) claim during the life of the plan, despite a maturity date outside the plan, if the terms of the

contract underlying the § 1322(b)(2) claim permits prepayment without violating § 1322(b)(2). *In re Sierra*, 560 B.R. at 301.   However, a chapter 13 plan cannot be confirmed if the plan purports to modify the interest rate of a § 1322(b)(2) claim because it would be an impermissible modification in violation of the Code.   *Id.* at 303; *see also* 11 U.S.C. § 1325(a)(1).

Federal Rule of Bankruptcy Procedure 3015 provides that "[i]f no objection is timely filed, the court may determine that the plan has been proposed in good faith and not by any means forbidden by law without receiving evidence on such issues."   Fed. R. Bankr. P. 3015(f). The Bankruptcy Local Rules provide that "[c]onfirmation will be set with a uniform notice, in the form promulgated from time to time by the Bankruptcy Court."   BLR 3015-1(c).   "The notice shall advise creditors that the deadline for filing objections to confirmation of the plan is 7 days before the date set for confirmation."   BLR 2002-1(c)(2).   Nevertheless once a plan is confirmed, even if it improperly modifies a § 1322(b)(2) claim or otherwise contradicts the Code, "[t]he provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan."   11 U.S.C. § 1327(a); *see also In re Chestnut*, 356 F. App'x 732, 737–38 (5th Cir. 2009) (holding that *res judicata* applies to a confirmed plan because undoing "the finality of a confirmed and completed Chapter 13 plan at the behest of a creditor that had notice of the plan and an opportunity to object . . . would be contrary to § 1327(a) and would "disturb th[e] reliance" of a chapter 13 Trustee in distribution of the funds); 8 COLLIER ON BANKRUPTCY ¶ 1327.02[1][a] (16th ed. 2009) ("The binding effect of the confirmation order . . . [makes i]t . . . incumbent upon creditors . . . to review the plan and object to the plan if they believe it to be improper; they may ignore the confirmation hearing only at their peril."). Confirmation orders in bankruptcy proceedings are final judgments that have a binding effect on

the parties involved.  *United Student Aid Funds, Ins. v. Espinosa*, 559 U.S. 260, 269 (2010); *see also In re Good*, 428 B.R. 235, 244 (Bankr. E.D. Tex. 2010) (noting that a chapter 11 plan becomes "binding" fourteen days after the plan is confirmed pursuant to § 1141(a) and Fed. R. Bankr. P. 3020(e)).  Notably, if a party wants to appeal a confirmation order, "a notice of appeal must be filed with the bankruptcy clerk within 14 days after entry of the . . . order."  Fed. R. Bankr. P. 8002(a)(1).  Furthermore, the Supreme Court determined that a final order confirming a plan is binding upon parties who received notice of the plan's application to them and failed to timely object to or appeal confirmation.  *Espinosa*, 559 U.S. at 275; *see also Bullard v. Blue Hills Bank*, 135 S. Ct. 1686, 1692 (2015) ("When the bankruptcy court confirms a plan, its terms become binding on debtor and creditor alike under 11 U.S.C. § 1327(a). Confirmation has preclusive effect, foreclosing relitigation of any issue actually litigated by the parties and *any issue necessarily determined by the confirmation order*.") (emphasis added); *Travelers Indemnity Co. v. Bailey*, 557 U.S. 137, 152 (2009) (discussing the *res judicata* effect of a final order and the binding effect a final order has on "parties and those in privity with them").

The application of *res judicata* produces finality for the parties and promotes judicial economy.  Parties know that when final judgment is entered and all appeals are exhausted, the case is over and the decision will be binding on all issues determined in the lawsuit or proceeding.  To determine whether a confirmation order has *res judicata* effect, the Fifth Circuit applies the following test:

> For a prior judgment to bar an action on the basis of *res judicata*, the parties must be identical in both suits, the prior judgment must have been rendered by a court of competent jurisdiction, there must have been a final judgment on the merits and the same cause of action must be involved in both cases.

*In re Chestnut,* 356 F. App'x at 736 (quoting *Nilsen v. City of Moss Point, Miss.*, 701 F.2d 556,

559 (5th Cir. 1983)).   Thus, courts give a confirmation order *res judicata* effect when the elements of the test are satisfied.  *In re Howard*, 972 F.2d 639, 641 (5th Cir. 1992).   "The scope of *res judicata* is not limited to matters actually litigated; the judgment in the first suit precludes a second action by the parties and their privies not only on matters actually litigated, but also on causes of action or defenses which arise out of the same subject matter and which might have been litigated in the first suit."  *EEOC v. Jefferson Dental Clinics, PA*, 478 F.3d 690, 695 (5th Cir. 2007) (quoting *Barr v. Resolution Trust Corp.*, 837 S.W. 2d 627, 630 (Tex. 1992)).   The Fifth Circuit, for example, determined that an unsecured creditor was bound to the plan, which released its guaranty, because the confirmed plan's terms were unambiguous and the creditor did not object to the plan.  *Republic Supply Co. v. Shoaf*, 815 F.2d 1046, 1050–54 (5th Cir. 1987).   Subsequently, the Fifth Circuit found that the Code sections, specifically § 1327, § 502, and § 506 (determining a creditor's secured status), "cannot be read in isolation but should be interpreted in light of the remainder of the statutory scheme."  *In re Howard*, 972 F.2d 639, 640 (5th Cir. 1992) (citing *United Savings Assoc. v. Timbers of Inwood Forest*, 484 U.S. 365, 370–72 (1988)).   In *Howard*, the debtor described the creditor's claim as "disputed" in the plan and listed the claim amount as $500.00, despite the creditor's proof of claim listing the amount as $4,590.47.  972 F.2d at 640.  The Fifth Circuit held that a chapter 13 plan that reduced a secured mortgage from $4,590.47 to $500.00 was not binding on a creditor when the debtor failed to object to the creditor's timely filed proof of claim and the creditor did not participate in confirmation of the plan.  *Id.* at 642; *see also In re Simmons*, 765 F.2d 547 (5th Cir. 1985).

Another case at the root of both Debtors' and Montanaro's briefs is *In re Chestnut*, 356 F. App'x at 732.   The dispute in *Chestnut* involved Templeton Mortgage Corporation's ("**Templeton**") allegation that its lien in question—which the debtor provided for in the

confirmed chapter 13 plan based on the debtor-filed proof of claim—was solely the property of the debtor's wife and therefore refused to release the lien after the debtor made all the required payments under the Plan.  *Id.* at 732.  Similar to the case at bar, the debtor in *Chestnut* submitted a proof of claim on behalf of Templeton and proposed a chapter 13 plan which included Templeton's claim to which Templeton did not object.  *Id.* at 734–35.  After making all of the payments under the plan which included Templeton's claim, the debtor sought release of Templeton's lien, which Templeton refused on the basis that (i) the plan payments were insufficient to satisfy the debt and (ii) the debtor's plan could not affect the validity of the lien. *Id.* at 735.  Accordingly, the Fifth Circuit found that the "*res judicata* effect of the bankruptcy court's Chapter 13 confirmation order bars Templeton's claim that the bankruptcy court could not order its lien released. *Id.* at 740.

In addition to the four element *res judicata* test, the basis of determining when a final order is binding upon a party turns on whether the challenging party received notice and was afforded an opportunity to litigate the contents of a plan or order.  *Compare id.* at 736 *with Espinosa*, 559 U.S. at 271–72.  "A person has notice of a fact or condition if that person (1) has actual knowledge of it; (2) has received information about it; (3) has reason to know about it; (4) knows about a related fact; or (5) is considered as having been able to ascertain it by checking an official filing or recording.  *Notice*, BLACK'S LAW DICTIONARY (10th ed. 2014).  Notice, however, must satisfy due process in order to not deprive a party of an opportunity to be heard. *Espinosa*, 559 U.S. at 270–71.  "Due process requires notice 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'"  *Id.* at 272 (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306 (1950)).  Actual notice, however, is a question of fact rather than a

question of law.  *Doe v. Dallas Indep. Sch. Dist.*, 220 F.3d 380, 384 (5th Cir. 2000).  Actual notice is defined as "notice given directly to, or received personally by, a party."  *Actual Notice*, BLACK'S LAW DICTIONARY (10th ed. 2014).  As actual notice is not the due process standard, if a creditor receives actual notice then due process is "more than satisfied."  *Espinosa*, 559 U.S. at 272.

Although notice is an integral component of this inquiry, the Fifth Circuit determined that a non-participating secured creditor cannot have its lien voided merely by receiving effective notice which satisfies the due process standard, instead, participation is required when a lien is voided by a plan.  *In re S. White Transp., Inc.*, 725 F.3d 494, 497–98 (5th Cir. 2013) (considering that "the word 'participation' connotes activity, and not mere nonfeasance"); *see also Nat'l Fed'n of Indep. Bus. v. Sebelius*, 132 S. Ct. at 2587 (comparing the difference between taking part in an activity and choosing not to act).  Implicitly, an unsecured creditor that receives notice and files a proof of claim can be found to have participated in the debtor's bankruptcy, thereby having no viable claim on a debt that was extinguished by the debtor's plan of reorganization.  *In re Treyson Dev., Inc.*, 2016 WL 1604347, at *13 (Bankr. S.D. Tex. Apr. 19, 2016) (citing *In re S. White Transp., Inc.*, 725 F.3d at 498).

Further, Supreme Court precedent implicitly affirms the Fifth Circuit's holding in *Chestnut* because a confirmation order "remains enforceable and binding" provided the creditor "had notice of the error and failed to object or timely appeal."  *Compare Espinosa*, 559 U.S. at 275 *with In re Chestnut*, 356 F. App'x at 737–38.  *But see In re Sierra*, 560 B.R. at 302–303 (holding that a plan cannot be confirmed due to an impermissible modification to a mortgage under § 1322(b)(2)).  Subsequent to both *Espinosa* and *Chestnut*, the Fifth Circuit limited

*Espinosa* to a case dealing with a Fed. R. Civ. P. 60(b)[8] motion for relief and found *Espinosa* to be "wholly inapposite" to the facts in *White Transp.*—a case finding a confirmed plan which voids a lien to be *res judicata. In re S. White Transp. Inc*, 725 F.3d at 497, n. 1.  The Supreme Court, however, emphasized the importance of *Espinosa* and noted that "confirmation has preclusive effect, foreclosing relitigation of any issue actually litigated by the parties and *any issue necessarily determined by the confirmation order.*"  *Bullard*, 135 S. Ct. at 1692 (citing *Espinosa*, 559 U.S. at 275) (emphasis added).

**D.  Adversary Proceedings to Determine the Validity, Priority, or Extent of Liens**

An adversary proceeding is required to "determine the validity, priority, or extent of a lien or other interest in property."  Fed. R. Bankr. P. 7001(2).  The Code provides a specified order demonstrating which expenses and claims have priority over others in a confirmed plan.  11 U.S.C. § 507.  The Code does not define 'validity' or 'extent,' however, this Court may consider the ordinary meaning of each in determining whether an adversary proceeding is required pursuant to Rule 7001(2).  *Compare* § 101 *with Invalid*, BLACK'S LAW DICTIONARY (10th ed. 2014) (defining as "not legally binding") *and Valid*, BLACK'S LAW DICTIONARY (10th ed. 2014) (defining as "legally sufficient; binding") *and* 7 COLLIER ON BANKRUPTCY, ¶ 7001.03 (16th ed. 2017) (noting that "[t]he term 'extent of a lien' may be misleading" and that an

---

[8] On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:

    (1) mistake, inadvertence, surprise, or excusable neglect;
    (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
    (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
    (4) the judgment is void;
    (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
    (6) any other reason that justifies relief.

adversary proceeding is required to determine the extent to which a lien attaches to specific property claimed).  The requirement to determine the extent of a lien in an adversary proceeding derives from "procedural rules adopted by the Court for the orderly transaction of its business that are not jurisdictional."  *Espinosa*, 559 U.S. at 272 (quoting *Kontrick v. Ryan*, 540 U.S. 443, 454 (2004)).  Valuation, however, is "not [an issue of] validity in any guise" and therefore, does not require an adversary proceeding.  7 COLLIER ON BANKRUPTCY, ¶ 7001.03 (16th ed. 2017). "Although 'validity, priority, or extent' are expressed in the disjunctive, often more than one of these aspects of a lien will be determined in the same proceeding."  *Id.*

"The validity of a lien may be determined in contexts other than adversary proceedings." *Id.*  In *Chestnut*, Templeton alleged that the confirmed plan was not *res judicata* because the bankruptcy court could only have its lien released through an adversary proceeding.  *In re Chestnut*, 356 F. App'x at 738.  The Fifth Circuit rejected that argument because the confirmed plan did not void Templeton's lien, but rather "expressly acknowledged that Templeton's claim was fully secured and required—upon full payment of the claim—that Templeton release any lien securing the claim" and therefore, an adversary proceeding was not required.  *Id.*  In *Chestnut*, the Fifth Circuit determined that because the confirmed plan did not challenge the validity, priority, or extent of the creditor's lien that Rule 7001(2) did not apply and the Court found that the confirmed plan was *res judicata* as to the creditor.  *Id.*  As the debtor satisfied the plan's requirements and fully paid Templeton's claim, the Fifth Circuit found that the bankruptcy court had the authority to enforce the plan and order Templeton's lien to be released.  *Id.* at 739.

## E.  A Chapter 13 Discharge Is Granted Only After Debtors Have Completed All Payments Under The Plan

Section 1328(a) provides, *inter alia*, a bankruptcy court shall grant a debtor a discharge

of debts provided for in the plan "as soon as practicable after completion by the debtor of all payments under the plan." *See also In re Gonzales*, 2017 WL 2189562, at *3 (Bankr. S.D. Tex. May 17, 2017). If a debtor satisfies the requirements of § 1328(a), a court must grant a motion for discharge. *In re McCarthy*, 391 B.R. 372, 375 (Bankr. N.D. Tex. 2008) (citing *Union City Barge Line, Inc. v. Union Carbide Corp.*, 823 F.2d 129, 135 (5th Cir. 1987)). *But see* 11 U.S.C. § 727 (providing circumstances in which a court may not grant a discharge). Nevertheless, if a creditor desires to object to a debtor's discharge, the creditor must do so "no later than 60 days after the first date set for the meeting of creditors under § 341(a)." Fed. R. Bankr. P. 4004(a). *But see* 11 U.S.C. § 523 (listing exceptions to discharge). If a creditor fails to object to a debtor's discharge, the court must grant a motion for discharge provided the debtor satisfies the requirements of § 1328(a). Fed. R. Bankr. P. 4004(a); *see also In re McCarthy*, 391 B.R. at 375; *In re Romano*, 170 B.R. 90, 93 (Bankr. W.D. Pa. 1994) (finding creditor's waived their right to object to the debtor's discharge for failing to object within the time frame set by Rule 4004(a)).

## IV. <u>CONCLUSIONS OF LAW</u>

### A. Jurisdiction & Venue

This Court holds jurisdiction pursuant to 28 U.S.C. § 1334, which provides "the district courts shall have original and exclusive jurisdiction of all cases under title 11." Section 157 allows a district court to "refer" all bankruptcy and related cases to the bankruptcy court, wherein the latter court will appropriately preside over the matter. 28 U.S.C. § 157(a); *see also* In re: Order of Reference to Bankruptcy Judges, Gen. Order 2012-6 (S.D. Tex. May 24, 2012). At its core, this case involves issues regarding the possible modification of a home mortgage; the effect of plan confirmation on a home mortgage proof of claim filed by Debtors on behalf of Montanaro; acceptance of payments by Montanaro under a confirmed plan; whether or not

acceptance of those payments rises to the level of "participation" under Fifth Circuit authority and if so whether the payment of Montanaro's claim under a confirmed plan is binding on Montanaro; and whether Debtors are entitled to a discharge pursuant to § 1328(a).  Accordingly, this is a core matter as it "concern[s] the administration of the estate," "allowance or disallowance of claims against the estate," "confirmation of plans," & "other proceedings affecting . . . the adjustment of the debtor-creditor . . . relationship." § 157(b)(2)(A), (B), (L), (O); s*ee also In Re Southmark Corp.*, 163 F.3d 925, 930 (5th Cir. 1999).[9]

This Court may only hear a case in which venue is proper.  28 U.S.C. § 1408.  In their petition, Debtors list their residence as Brownsville, Texas.  ECF No. 1 at 1.  Therefore, venue is proper.

**B.  Constitutional Authority to Enter a Final Order**

This Court has an independent duty to evaluate whether it has the constitutional authority to sign a final order.  *Stern v. Marshall*, 564 U.S. 462 (2011).  *But see Wellness Int'l Network v. Sharif*, 135 S. Ct. 1932, 1938-39 (2015) (holding that parties may consent to a bankruptcy court's authority to enter final orders in non-core matters).  Despite acknowledging that the Motion to Deem presents a core matter, Montanaro alleges that this Court does not have the constitutional authority to enter a final order.  ECF No. 109 at 1.  Specifically, Montanaro asserts that "[t]he cancellation or voiding of a lien on real estate constitutes an exercise of the judicial power" only exercisable by an Article III judge.  *Id.*  Montanaro, however, does not cite any authority for this position.  *Id.*  Yet, Montanaro asserts that it does not consent to entry of a final order on Debtors' Motion to Deem.  *Id.*  Debtors counter that as this is a core matter and does not involve a state law claim, *Stern* is inapplicable.  ECF No. 116.  Debtors suggest that the Motion

---

[9] "[A] proceeding is core under section 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case."

to Deem seeks enforcement of the Plan and a determination that Montanaro's claim has been fully paid. *Id.* at ¶ 7.

The Court agrees with Debtors' assessment of the constitutional posture of this case. As discussed above, the issue before the Court is a core matter because it falls squarely within the Code. § 157(b)(2)(A), (B), (L), (O). *Stern* held that a bankruptcy court "lacked the constitutional authority to enter a final judgment on a state law counterclaim that is not resolved in the process of ruling on a creditor's proof of claim." 564 U.S. at 503. Notably, this case does not involve a state law counter claim. Montanaro contends that this case does not fall under the Code because it involves cancelling Montanaro's lien. Rather, this is squarely a core matter involving enforcement of the Court's Confirmation Order regarding Debtors' Plan, which provides for Montanaro's lien. *See* ECF No. 82; *see also In re. Nat'l Gypsum Co.*, 219 F.3d 478, 483 (5th Cir. 2000) ("[T]he bankruptcy court [may] interpret and construe the Confirmation Order, plan, and plan documents regarding matters as to which there is a substantial and immediate controversy."); *In re Bros. Materials, Ltd.*, 2016 WL 7338409, at *7 (finding that a motion to enforce a plan is an interlocutory order, but the court had the constitutional authority to enter final judgment because interpreting a plan falls within § 157(b)(2)). Additionally, this is a core proceeding because Debtors seek entry of a chapter 13 discharge, which also squarely falls within the Code. § 1328(a); *In re Gonzales*, 2017 WL 2189562, at *4 (finding the court had constitutional authority to enter a final order on a motion for discharge).

Accordingly, this Court has the constitutional authority to enter a final order in this matter. *In re Gonzales*, 2017 WL 2189562, at *4; *In re Bros. Materials, Ltd.*, 2016 WL 7338409, at *7.

**C. Debtors' Plan, and Related Confirmation Order, Did Not Void Montanaro's Lien and**

**Require Montanaro to Release its Lien Upon Entry of Debtors' Discharge**

In order to determine whether Montanaro should be bound by the terms of the confirmed Plan vis-à-vis the Confirmation Order, the Court must take pause and first examine the Plan itself and query whether Debtors' Plan attempted to void Montanaro's lien, or whether the Plan provided for something less deleterious. *See* ECF Nos. 25, 38; *In re S. White Transp., Inc.*, 725 F.3d at 497–98. *But see Espinosa*, 559 U.S. at 271–72, 276. The lynch pin of Debtors' argument is that the Plan did not provide for the voiding of Montanaro's lien; rather, the Plan provided for the payment of Montanaro's claim while retaining its lien "until discharge". ECF No. 108 at 11; *see also* ECF Nos. 25, 28; Claim No. 12-1. Conversely, Montanaro contends that Debtors' Plan attempted to void its lien and therefore, Montanaro's participation in the confirmation process was required in order for this Court to grant Debtors' Motion to Deem. ECF No. 109 at 8.

Here, Debtors' Plan provisioned payments for Montanaro's lien in the amount of $23,320.00, pursuant to Claim No. 12. *Compare* ECF No. 25 at 6 *and* Claim No. 12-1 *with In re Vitro Asset Corp.*, 656 F. App'x at 720–21 *and In re S. White Transp.*, 725 F.3d at 495–96 *and In re Ahern Enters.*, 507 F.3d at 824–25. Although Montanaro, vis-à-vis Mr. Montanaro, provided Mrs. Shank a handwritten calculation noting that Debtors owed more on the loan than what Claim No. 12 provided at the end of the bankruptcy, it does not constitute an objection or amendment to Claim No. 12. *Compare* Ex. 17 *with* Claim No. 12-1. Importantly, Claim No. 12, albeit filed by the Debtors, is an allowed claim, which "constitute[s] prima facie evidence of the validity and amount of the claim," because no party—let alone Montanaro—objected. § 502(a); Fed. R. Bankr. P. 3001(f); *see also Midland Funding, LLC v. Johnson*, 137 S. Ct. 1407, 1412 (2017).

Therefore, taking into consideration the relevant jurisprudence in addition to the evidence in the record and arguments presented by the parties, this Court considers whether Debtors' Plan, and related Confirmation Order, which provisioned for Montanaro to be paid pursuant to the amount listed in Claim No. 12, voided Montanaro's lien.  *See* ECF No. 25.  Montanaro argues that pursuant to Fifth Circuit precedent, it must, *inter alia*, have "participate[d] in the reorganization" in order for its lien to be voided.  ECF No. 109; *see also In re Ahern Enters. Inc.*, 507 F.3d at 822.  Montanaro, however, ignores an essential step in this Court's inquiry before this Court should consider the *Ahern* analysis: to wit, whether Debtors' Plan voids Montanaro's lien in the first place.  Notably, the *Ahern* test differs from the case at bar because it requires that under § 1141(c), the confirmation of a plan "voids liens on property dealt with by the plan unless they are specifically preserved, if the lien holder participates in the reorganization," whereas the case at bar involves a dispute as to whether Debtors' Plan voided Montanaro's lien at all. *Compare In re Ahern Enters. Inc.*, 507 F.3d at 820 *with* ECF Nos. 25, 82, 108, 109. Accordingly, if Debtors' Plan does not void Montanaro's lien, the *Ahern* test is not relevant to this Court's inquiry.  *See generally  In re Ahern Enters. Inc.*, 507 F.3d at 822.

Although the Code does not define what constitutes voiding a lien, Fifth Circuit establishes that a confirmed plan attempts to void a lien when, *inter alia*, a creditor recovers nothing on its lien under the plan and when the lien is not specifically preserved by the plan. *Compare* § 101 *with In re Vitro Asset Corp.*, 656 F. App'x at 720–21 (noting that the creditor recovered their base claim, but failed to conform with the plan's terms resulting in the lien for interests, penalties, or collection fees being voided) *and In re S. White Transp.*, 725 F.3d at 495– 96 *and In re Ahern Enters.*, 507 F.3d at 824–25.  A determination that a lien is voided when, *inter alia*, a creditor receives no recovery under a plan comports with the ordinary meaning of

void.  *Void*, BLACK'S LAW DICTIONARY (10th ed. 2014); *see generally Yates v. United States*, 135 S. Ct. 1074, 1081 (2015) (noting that the ordinary meaning of a word is stated in its dictionary definition).  Here, Debtors' Plan provided a recovery for Montanaro and it did, in fact, recover $23,320.00 on Claim No. 12 and an additional $2,281.90.  ECF No. 25; Exs. 15, 16.  The facts in this case are entirely distinguishable from the Fifth Circuit precedent on which Montanaro relies because the Plan in this case did not purport to void Montanaro's lien by depriving it of any recovery, rather it sought to pay Montanaro in accordance with Claim No. 12. *Compare* ECF No. 25 at 6 *and* Claim No. 12-1 *with In re Vitro Asset Corp.*, 656 F. App'x at 719–20 *and In re S. White Transp.*, 725 F.3d at 495–96 *and In re Ahern Enters.*, 507 F.3d at 824–25.  Additionally, in this case, the Confirmation Order explicitly provides that "each secured creditor shall retain the lien existing prior to the commencement of the case . . . until the Debtor is discharged."  ECF No. 38.  Accordingly, Montanaro's lien is explicitly preserved by the Confirmation Order until entry of Debtors' discharge.  *Compare id. with In re Vitro Asset Corp.*, 656 F. App'x at 719–20 *and In re S. White Transp.*, 725 F.3d at 495–96 *and In re Ahern Enters.*, 507 F.3d at 824–25. Therefore, the Court finds that Debtors' Plan did not void Montanaro's lien because it purported to pay Montanaro the full amount of Claim No. 12 and provided for the lien to be retained until entry of Debtors' discharge rather than depriving Montanaro of any recovery. ECF Nos. 25, 38; Claim No. 12-1.

Having determined that Debtors' Plan did not provide for the voiding of Montanaro's lien, the Court now turns to the Confirmation Order itself to ascertain whether it, rather than the Plan, provisioned for the voiding of Montanaro's lien.  *See* ECF No. 38.  The Confirmation Order dictates that "each secured creditor shall retain [its] lien existing prior to the commencement of the case to secure payment of the allowed amount of its claim until the Debtor

is discharged." *Id.* Accordingly, the Confirmation Order unequivocally requires secured creditors, such as Montanaro, to release their lien on two conditions: to wit, (1) when the secured creditor receives the full amount of its allowed claim, and (2) when the Debtor is discharged. *Id.*; *Compare* Exs. 3, 6, 7 *and* Tex. Prop. Code § 53.152(a) (requiring a creditor to furnish a "release of the indebtedness and any lien claimed, to the extent of the indebtedness is paid" when the debt "is satisfied or paid by collected funds") *with In re Howard*, 972 F.2d at 642 ("A Chapter 13 plan may by its very nature change the terms of payment and otherwise modify the terms of the debt underlying the lien."). Turning to the first condition, whether Montanaro received the full amount of its allowed claim, this Court finds that Debtors paid Trustee—who in turn distributed the funds to Montanaro—$23,320.00 together with interest in the amount of $2,281.90 for a total amount of $25,601.90, fully satisfying Claim No. 12 and Montanaro accepted all of the payments from the Trustee, albeit reluctantly. *Compare* Exs. 15, 16 *with* Claim No. 12-1. Therefore, the first condition for requiring Montanaro to release its lien is satisfied. *See* ECF No. 38. Although this Court has not yet entered Debtors' discharge to satisfy the second condition, this Court finds that pursuant to the Confirmation Order, Montanaro would be required to release its lien upon entry of discharge. *Id.* Accordingly, the Court finds that the Confirmation Order did not void Montanaro's lien, but instead requires that Montanaro release its lien upon payment in full of Claim No. 12, which has occurred, and the entry of discharge, which will be entered simultaneously with the entry of this Memorandum Opinion and accompanying Order.

Now that the Court has established that neither the Plan nor the Confirmation Order voided Montanaro's lien, the Court must now decide whether Montanaro should be bound by the Plan and Confirmation Order if, as Montanaro contends, it did not participate in the bankruptcy

proceeding, particularly the Plan's confirmation.

**D.  Montanaro's claim is barred by _Res Judicata_**

Prior to addressing Montanaro's contention that it cannot be bound to the Plan or the Confirmation Order because it did not participate in the bankruptcy proceeding, much less plan confirmation, the Court must consider whether equitable doctrine of _res judicata_ applies and if Montanaro had notice sufficient to satisfy due process and an opportunity to litigate the contents of the Plan and related Confirmation Order.  _Compare Espinosa_, 559 U.S. at 271–72, 276 _with In re S. White Transp., Inc._, 725 F.3d at 497–98.  Debtors contend that § 1327(a) binds Montanaro to the terms of the Plan and thus the Confirmation Order triggering the doctrine of _res judicata_ barring Montanaro from relitigating the issues that it attempts to raise in opposition to the Motion to Deem—that is, that the Plan and the Confirmation Order had no force or effect on Montanaro's claim and resulting lien—whereas Montanaro, unsurprisingly, argues the contrary. _Compare_ ECF No. 108 at 11 _with_ ECF No. 109 at 7–9.  Specifically, Montanaro alleges that Claim No. 12 failed to pay the entirety of Montanaro's lien and reduced the original interest rate in contravention of § 1322(b)(2) and that the reliance on Claim No. 12 by the Plan and Confirmation Order results in an impermissible modification to Montanaro's § 1322(b)(2) claim and therefore, Montanaro cannot be bound to either.  _See generally_ ECF No. 109.

The doctrine of _res judicata_ bars litigation of a claim previously litigated or one that should have been raised in a prior suit if: (1) the parties are identical in both actions; (2) a court of competent jurisdiction rendered the prior judgement; (3) there was a final adjudication on the merits; and (4) the both cases involve the same cause of action.  _In re Chestnut_, 356 F. App'x at 736, _Shoaf_, 815 F.2d at 1051.  In applying the four _res judicata_ elements, the Court concludes that _res judicata_ bars relitigation of confirmation.  First, Montanaro and Debtors were each

parties throughout the confirmation process and are again parties to Debtors' Motion To Deem. ECF No. 82. The record shows that notices regarding the Debtors' bankruptcy were mailed to Montanaro beginning in August 2011. ECF No. 14; Ex. 8. Although Montanaro did not raise any objection before the Court confirmed the Debtors' Plan, Montanaro admits that it received notice of the Debtors' bankruptcy, the Plan, and the Confirmation Order, as discussed further below. ECF Nos. 14, 19, 20, 36, 39; Ex, 8. Thus, both Montanaro and the Debtors were involved in this case.

Second, the Court had jurisdiction to issue the Confirmation Order. *See* § 157(b)(2)(L). Although Montanaro disputes the Court's subject matter jurisdiction in this case, implicit in the Confirmation Order was a determination that the Court has subject matter jurisdiction. *See* ECF No. 38. Montanaro had the opportunity to raise the question of jurisdiction prior to confirmation but failed to do so. The Confirmation Order was therefore issued by a court of competent jurisdiction. *Shoaf,* 815 F.2d at 1051–53.

Third, Montanaro never objected to nor appealed the Confirmation Order and therefore, it is a final adjudication on the merits. The Notice of Confirmation sent by Trustee on August 22, 2011, stated that:

> If the Court confirms the plan, its terms and conditions will legally bind all parties. If you object to confirmation, you must file a written objection with the Bankruptcy Clerk at least seven (7) days before the confirmation hearing, serve a copy of your objection on the Trustee and the attorney for the Debtors and appear at the confirmation hearing to present your objection to the Court.

ECF No. 17. The Notice of Confirmation was served on Montanaro, and yet, no objections to confirmation were filed by January 26, 2012, as required by the local rules. ECF No. 20. The Court confirmed the Debtors' Plan, which treated Montanaro's claim, on February 2, 2012, and became a final order because the Confirmation Order was not timely appealed. *See Eubanks v.*

*F.D.I.C.,* 977 F.2d 166, 169 (5th Cir. 1992).   Explicit in the Confirmation Order was a declaration that stated "[a]ll collateral for secured claims will be deemed valued as set out in the Trustee's Report and each secured creditor shall retain the lien existing prior to the commencement of the case to secure payment of the allowed amount of its claim until the Debtor is discharged."   ECF No. 38.   If Montanaro believed that Debtors' Plan was confirmed in error because the Plan did not provision for the entirety of its lien, the proper remedy was to file an appeal and seek review of the Confirmation Order.   Although Montanaro dismisses its importance, this case is analogous to *Chestnut* because Montanaro, similar to Templeton, failed to object to Claim No. 12, Debtors' Plan, or directly appeal the Confirmation Order.   *See In re Chestnut*, 356 F. App'x at 736.   At the end of this case, Montanaro, again like Templeton, is refusing to release its lien based on the premise that the payments made under the plans were insufficient to satisfy the original notes.   *Compare id.* at 735 *with* Ex. 17.   Here, as discussed below, Montanaro had the requisite notice that the Plan purported to pay its claim at $23,320.00 at 5.25% and the Confirmation Order sought to release Montanaro's lien upon entry of Debtors' discharge, and Montanaro failed to object, appeal, or take any type of action until the Debtors filed their Motion to Deem.   *See, e.g.,* ECF Nos. 1, 19, 20, 23, 24, 25, 36, 39, 42, 57, 75, 77, 82. Consequently, the third element of *res judicata* is satisfied.

Finally, the same cause of action is involved in both suits. Under the transactional test, a prior final judgment precludes relitigation of all rights of the plaintiff with respect to all or any part of the transaction.   *Test Masters Educ. Serv., Inc. v. Singh,* 428 F.3d 559, 571 (5th Cir. 2005).   The focus is on whether the two actions are based on the same nucleus of operative facts. *Davis v. Dallas Area Rapid Transit,* 383 F.3d 309, 313 (5th Cir. 2004).   "If a party can only win the suit by convincing the court that the prior judgment was in error, the second suit is barred."

*Singh,* 428 F.3d at 571.   In this case, Montanaro essentially argues that the Court erred in confirming Debtors' Plan because it should not have been confirmed due to the Plan's alleged improper modification of the Mortgage, and thus, the Court cannot grant the Motion to Deem. *See* ECF No. 109.   Accordingly, Montanaro could only prevail on its argument in opposition to the Motion to Deem if the Court first determined that the Confirmation Order was entered in error for those same reasons and therefore, the same cause of action is involved and the fourth and final element of *res judicata* is satisfied.   *Singh,* 428 F.3d at 571; *see also Bullard*, 135 S. Ct. at 1692 ("Confirmation has preclusive effect, foreclosing relitigation of any issue actually litigated by the parties and *any issue necessarily determined by the confirmation order.*") (emphasis added).

Accordingly, Debtors' Plan and Confirmation Order satisfy the four required elements to bar Montanaro from relitigating the amount of its claim under *res judicata* pursuant to Fifth Circuit precedent, however, this Court's inquiry does not end here.   *See In re Chestnut*, 356 F. App'x at 736.   Due to the unique posture of this case, however, the Debtors' Plan and the Confirmation Order could only be enforceable and binding, ergo *res judicata*, as to Montanaro if Montanaro had notice of the alleged error and failed to object or timely appeal.   *Espinosa*, 559 U.S. at 275.

### 1.  Montanaro Received Actual Notice of the Plan and Confirmation Order

Accordingly, this Court must address whether Montanaro received notice and if so, whether such notice met the due process standard of notice "reasonably calculated, under all the circumstances, to apprise [Montanaro] of the pendency of the action and afford[ed] [it] an opportunity to present [its] objections."   *Id.* (quoting *Mullane*, 339 U.S. at 306). It is uncontroverted that Montanaro received notice of not only Debtors' bankruptcy and Plan, but

also of the Confirmation Order and the order modifying the Plan.  ECF Nos. 14, 20, 36, 39, 57.

Additionally, although Montanaro alleges there is no evidence indicating Debtors served Claim

No. 12 on Montanaro, it is undisputed that the address attributed to Montanaro on Claim No. 12

is identical to the address listed on the various BNC notices regarding Debtors' bankruptcy, the

Plan, and confirmation.[10]  *Compare* Claim No. 12-1 *with* ECF Nos. 1, 19, 20, 23, 24, 25, 36, 39,

42 *and* Ex. 8.  Further, the evidentiary record reflects that Debtors' Counsel sent Montanaro a

letter on August 18, 2011, not only informing Montanaro of Debtors' bankruptcy, but also

requested Montanaro inform Debtors' Counsel if the address listed in the letter was incorrect in

order to ensure Montanaro received appropriate notice.  Ex. 8.  There is no evidence in the record

to reflect, nor did Montanaro allege, that the address attributed to Montanaro was incorrect.  The

"smoking gun" occurred at the March 7, 2017 Hearing, where this Court asked Montanaro's

Counsel, "There [are] no allegations that notice provided to Mr. Montanaro or his company at

the beginning of the case or any time during the case was not properly provided, is there?"

Montanaro's Counsel responded, "As far as I know there was the kind of notice that has to be

provided."  Montanaro's Counsel's statement that Montanaro was provided notice constitutes a

judicial admission because it was a "formal concession" by counsel "that is binding on the party

making them."  *Martinez v. Bally's La., Inc.*, 244 F.3d 474, 476 (5th Cir. 2001) ("A statement

made by counsel during the course of trial may be considered a judicial admission if it was made

intentionally as a waiver, releasing the opponent from proof of fact.").  As this statement in the

March 7, 2017 Hearing was made intentionally by Montanaro's Counsel in direct response to

this Court's questioning, this Court would be hard pressed to find that Montanaro did not receive

actual notice of Debtors' bankruptcy, Plan, related orders, filed pleadings and noticed hearings.

---

[10] Montanaro's address is listed as 3107 Boca Chica, Brownsville, TX 78521.

*See* ECF Nos. 1, 19, 20, 23, 24, 25, 36, 39, 42, 57, 75, 77, 82; Ex. 8; Claim No. 12-1.  Therefore, this Court finds that Montanaro received actual notice of the following:

1.  Chapter 13 Voluntary Petition.  ECF No. 1;
2.  Notice Letter of Bankruptcy Filing.  Ex. 8;
3.  Notice of Chapter 13 Bankruptcy Case, Meeting of Creditors, & Deadlines.  ECF No. 19;
4.  Trustee's Notice of Confirmation Hearing and Plan Summary.  ECF No. 20;
5.  Trustee's Motion to Dismiss Case.  ECF Nos. 23, 24;
6.  Debtors' Plan.  ECF No. 25;
7.  Trustee's Notice of Confirmation Hearing and Plan Summary.  ECF No. 36;
8.  Confirmation Order.  ECF No. 39;
9.  Trustee's Notice of Intent to Pay Claims.  ECF No. 42;
10. Claim No. 12.  Claim No. 12-1;
11. Modification Order.  ECF No. 57;
12. Trustee's Notice of Plan Completion.  ECF No. 75;
13. Debtors' Certification.  ECF No. 77;
14. Motion to Deem.  ECF No. 82.

In fact, Montanaro's continuous receipt of notice throughout this case is analogous to *Espinosa* where the Supreme Court found that the creditor received actual notice of the debtor's plan upon receiving a notice and copy of the bankruptcy plan in the mail from the clerk of the bankruptcy court.  *Compare* 559 U.S. at 265, 272 *with* ECF Nos. 1, 19, 20, 23, 24, 25, 36, 39, 42, 57, 75, 77, 82 *and* Ex. 8 *and* Claim No. 12-1; *see also In re Treyson*, 2016 WL 1604347, at *13.  Therefore, Montanaro not only received notice "reasonably calculated, under all the circumstances, to apprise [Montanaro] of the pendency of the action and afford[ed] [it] an opportunity to present [its] objections," Montanaro received actual notice of the Plan and Confirmation Order.  *See Espinosa*, 559 U.S. at 272; *In re Bros. Materials*, 2016 WL 7338409, at *7; *In re Treyson*, 2016 WL 1604347, at *13.

### 2.  Montanaro Did Not Object to the Treatment of Claim No. 12, Debtors' Plan, or the Confirmation Order

Having determined that Montanaro received actual notice thereby satisfying due process requirements, the Court must consider whether Montanaro at any time objected to Claim No. 12, the Plan, or the Confirmation Order such that it should not be bound to the terms of the Plan under *res judicata*. *See Espinosa*, 559 U.S. at 272. As discussed thoroughly above, Montanaro utterly failed to object to Claim No. 12 or Debtors' Plan, and failed to appeal the Confirmation Order. Irrespective of Montanaro's allegations that the Plan impermissibly modified the Mortgage, Montanaro, despite his resolve, cannot disturb Debtors' and Trustee's reliance on the Plan and Confirmation Order after the Plan is completed. *See Espinosa*, 559 U.S. at 275; *In re Chestnut*, 356 F. App'x at 737–38. *But see In re Sierra*, 560 B.R. at 302–03.

Conversely, as a parting shot, Montanaro posits that in order to be bound by the Plan and Confirmation Order, Montanaro must have participated in the confirmation process, irrespective of whether it received notice and failed to object. ECF No. 109 at 6–7 (citing *In re Howard*, 972 F.2d 639, 641 (5th Cir. 1992) for the proposition that a chapter 13 plan is "*res judicata* as to all parties who participate in the confirmation process"). Montanaro contends that although Debtors rely on *Chestnut*, the holding in *Howard* renders the facts in this case inapposite because Montanaro did not participate in the confirmation process. ECF No. 109 at 6–7. However, Debtors counter that even if participation in the confirmation process was a requirement for the doctrine of *res judicata* to apply to Montanaro the act of Montanaro cashing the Trustee's checks amounted to active participation under Fifth Circuit precedent. ECF No. 108 at 13–14 (citing *Rivera v. Bank of Am., N.A.*, 607 F. App'x 358, 361 (5th Cir. 2015) for the proposition that a creditor's voluntary acceptance of payments after acceleration of a loan is enough to result in the creditor abandoning its acceleration rights). Montanaro fires back and states that Debtors' reliance on *Rivera* is a "red herring" because loan acceleration is not relevant to the issue at bar.

ECF No. 109 at 9.  Furthermore, Montanaro decries that Debtors' Counsel coerced Montanaro into cashing the Trustee checks, which does not amount to participation in the confirmation process and that the *Ahern* 'participation' requirement involves participation in the confirmation of a plan which Montanaro did not do.  *Id.* at 7–9; *see also In re S. White Transp.*, 725 F.3d at 495–96; *In re Ahern Enters.*, 507 F.3d at 824–25.  Ultimately, Montanaro's arguments concerning participation have no bearing on this Court's analysis because there is no participation requirement in order to determine whether Debtors' Plan and related Confirmation Order are *res judicata* as to Montanaro.  As determined above, Debtors' Plan and related Confirmation Order do not attempt to void Montanaro's lien, which is entirely inapposite to Fifth Circuit precedent involving confirmed plans that voided a creditor's lien.  *Compare* ECF No. 25 *and* Claim No. 12-1 *with In re Vitro Asset Corp.*, 656 F. App'x at 719–20 *and In re S. White Transp.*, 725 F.3d at 495–96 *and In re Ahern Enters.*, 507 F.3d at 824–25.  Accordingly, given the evidence before it and under the facts of this case, this Court finds that Montanaro's participation was not required in order for Montanaro to be bound to Debtors' Plan and this Court's Confirmation Order under the *res judicata* doctrine.  *But see In re Vitro Asset Corp.*, 656 F. App'x at 719–20; *In re S. White Transp.*, 725 F.3d at 495–96; *In re Ahern Enters.*, 507 F.3d at 824–25.  Therefore, the level of Montanaro's participation in the confirmation process is irrelevant to this Court's consideration of the Motion to Deem.  *See generally Espinosa*, 559 U.S. at 275; *In re* Chestnut, 356 F. App'x at 737–38

Accordingly, the Court finds that Montanaro is bound to the terms of the Plan and Confirmation Order under the *res judicata* doctrine, and because Debtors paid the entirety of Claim No. 12—thereby fully paying their mortgage—Montanaro must release its lien upon entry of Debtors' discharge.  ECF Nos. 25, 38; Exs. 15, 16; *see Espinosa*, 559 U.S. at 275; *In re*

*Chestnut*, 356 F. App'x at 737–38.

**D.  Debtors are not Required to File an Adversary Proceeding under Rule 7001(2) in Order to Obtain the Release of Montanaro's Lien**

Having determined that Montanaro is barred from relitigating the Plan and the Confirmation Order, pursuant to *res judicata*, should the Debtors nevertheless be required to file an adversary proceeding pursuant to Fed. R. Bankr. P. 7001(2) in order to obtain the release of Montanaro's lien?  Montanaro asserts ordering it to release its lien would be, in essence, a violation of due process because Montanaro "has never been served with any kind of process that would bring it under [this] Court's authority."  ECF No. 109 at 12–13.  In other words, Montanaro would have Debtors file a formal complaint to void Montanaro's lien because, in Montanaro's view, the Plan and related Confirmation Order attempted to do determine the extent and validity of Montanaro's lien, which requires the filing of an adversary proceeding pursuant to Fed. R. Bankr. P. 7001.  *Id.* at 13.  Conversely, Debtors posit that an adversary proceeding is not required because Debtors are not seeking to challenge the validity, priority, or extent of Montanaro's lien, but rather, Debtors characterize their Motion to Deem as an action enforcing the confirmed Plan.  ECF No. 108 at 16–17.

Although an adversary proceeding is required to determine the validity, priority and extent of a lien, the issue before this Court is not whether the Plan challenges the "validity, priority, or extent" of Montanaro's lien, it is whether Montanaro should be bound to the Plan and related Confirmation Order.  *Compare* Fed. R. Bankr. P. 7001(2) *with* ECF No. 82.  Montanaro does not assert that its lien is improperly paid under the priority scheme of the Code; therefore 'priority' is not at issue.  *See* § 507.  Montanaro's contention that the Plan and Confirmation Order challenge the validity and extent of its lien is incorrect.  Neither the Plan nor Confirmation

Order declares that Montanaro's lien is not legally binding.  *Compare* ECF Nos. 25, 38 *with Invalid*, BLACK'S LAW DICTIONARY (10th ed. 2014).  Further, neither the Plan nor Confirmation Order challenges the extent to which Montanaro's lien attaches to Debtors' Homestead, rather they purport to pay the lien in accordance with Claim No. 12.  *See* ECF Nos. 25, 28; Claim No. 12-1; 7 Collier on Bankruptcy ¶ 7001.03 (16th ed. 2014) (noting that valuation of a lien does not require an adversary proceeding because it is not determining the 'extent' of a lien as contemplated by Rule 7001(2)).  Accordingly, as determined above, Montanaro is seeking to relitigate plan confirmation and the treatment of its claim; however, Montanaro does not demonstrate that there was ever a challenge to the validity, priority, or extent of its lien as to trigger the adversary proceeding requirement.  Fed. R. Bankr. P. 7001(2).

Once again, the Fifth Circuit's precedent in *Chestnut* is analogous to the case at bar because, much like *Chestnut*, Debtors' Plan did not "challenge the validity of [Montanaro's] lien, its priority over any other lien . . ., or its extent to the full value of [Montanaro's] claim," rather it simply provisioned for payment of the amount stated in Claim No. 12.  *Compare In re Chestnut*, 356 F. App'x at 738–39 *with* ECF No. 25 *and* Claim No. 12-1.  *Res judicata* binds Montanaro to Debtors' Plan vis-à-vis the Confirmation Order, which provides that "each secured creditor shall retain the lien existing prior to the commencement of the case to secure payment of the allowed amount of the claim until the Debtor is discharged."  ECF No. 38; *Espinosa*, 559 U.S. at 275; *see also In re Herbert*, 61 B.R. 44, 47 (Bankr. W.D. La. 1986) (holding that Rule 7001 did not apply because the IRS was bound to the *amount* of the lien provided for as an allowed secured claim in the confirmed plan).  As determined above, Debtor fully paid the allowed amount of $23,320.00 together with interest in the amount of $2,281.90 for a total amount of $25,601.90 listed in the Plan and as recited in Claim No. 12.  *Compare* Claim No. 12-1 *and* ECF No. 25 at 6 *with* Ex. 15

*and* Ex. 16.  Therefore, the Court finds that an adversary proceeding is not required for this Court to order Montanaro to release its lien because neither the Plan nor the Confirmation Order challenged the validity, priority, or extent of Montanaro's lien as to trigger Rule 7001(2).  *See In re Chestnut*, 356 F. App'x at 738–39; *In re Stewart*, 2010 WL 4259940, *8 (Bankr. E.D. La. Oct. 21, 2010) (holding that *Espinosa* "definitively ruled that notice of a plan and confirmation process satisfies due process even when its effect should only be achievable by adversary process").

**E.  Debtors are Entitled to Entry of a Chapter 13 Discharge Under § 1328(a)**

Having determined that Montanaro is bound to the terms of the Plan and related Confirmation Order, this Court must now determine whether Debtors are entitled to discharge.  *See* § 1328(a); *In re Gonzales*, 2017 WL 2189562, at *6.  On September 8, 2016, Trustee filed her Notice of Plan Completion, which certified that Debtors attended the § 341 meeting and made all payments to Trustee.  ECF No. 73; *see In re Gonzales*, 2017 WL 2189562, at *6 (finding that a chapter 13 trustee's notice of plan completion is not a requirement for entry of discharge).  Further both Debtors filed their respective Financial Management Course Certificates prior to completing the bankruptcy.  ECF Nos. 71, 72.  As discussed above, this Court determined that Debtors' mortgage was fully paid because the Plan provided for the full amount of Claim No. 12 and Debtors' made all of their payments under the Plan.  ECF No. 25; Exs. 15, 16.  Therefore, the Court finds that Debtors have completed all payments under the Plan and Debtors are entitled to a discharge pursuant to § 1328(a).  ECF No. 73; Exs. 15, 16; *see also In re Gonzales*, 2017 WL 2189562, at *7.

## V. CONCLUSION

At the end of Debtors' bankruptcy, Montanaro stirred and disputed that Debtors had fully

paid its lien.  Ex. 17.  Debtors, by and through the filing of a Motion To Deem, sought guidance from this Court as to whether Debtors' mortgage was fully paid and whether Debtors were entitled to entry of a chapter 13 discharge.  ECF Nos. 77, 82.  Based on Supreme Court and Fifth Circuit precedent, this Court holds that Debtors' Plan and related Confirmation Order are *res judicata* as to Montanaro because Montanaro received actual notice—thereby satisfying due process—of the Plan and the Confirmation Order and had the opportunity to object, but failed to do so, and therefore, the Debtors' mortgage is deemed fully paid pursuant to the terms of the Plan and related Confirmation Order.  *Espinosa*, 559 U.S. at 275; *In re Chestnut*, 356 F. App'x at 737–38.  Further, this Court holds that Debtors are eligible for a discharge under § 1328(a) because Debtors completed all payments under the Plan.  *In re Gonzales*, 2017 WL 2189562, at *7.

For the reasons stated above, the Debtors' Motion to Deem, ECF No. 82, is hereby **GRANTED**.  Further, Debtors have completed all requirements for entry of a discharge and therefore, the Clerk shall enter an order granting Debtors' discharge.  Upon entry of Debtors' discharge, Montanaro must execute and record a full and unequivocal release of its liens, encumbrances, and security interests secured by the Debtors' Homestead Property described as "1305 N. Indiana Ave, Brownsville, Texas 78521 with a legal description of El Jardin Resubdivision S3.837 ACS Out of Lot 1 Blk 310 PTN 8.75" in accordance with the terms of Debtors' Plan and related Confirmation Order and provide a copy of the release to Debtors and their counsel.  ECF Nos. 25, 38.

An Order consistent with this Memorandum Opinion will be entered on the docket simultaneously herewith.

SIGNED 06/29/2017.

Eduardo V. Rodriguez
United States Bankruptcy Judge